The employer's own documents J.A. 499 and 561 and 64 settle that question if you want to look at it simply that way because they do provide census forms for the individuals to fill out and those census forms on one case show the individual indicating she was black. I don't necessarily agree. But that's a form of self-identification that may be kept for various purposes. The question is how the employer would have viewed them realistically. Your client in an excerpt that's quoted on page 7 of the appellant's brief wouldn't answer directly the question of whether or not Mrs. Warbington was black. He repeatedly asked and he repeatedly insisted that she's Spanish, that's all I know she is. That's accurate because that's what she indicated she was. She indicated she was Spanish. This Court determined that previously, this Court determined that she also indicates that she's dark-skinned. I understand. But as this Court explained explicitly without hesitation in the Barela case, white people can be of different racial groups for 1981 purposes and so, therefore, can black people. The fact that she's black does not determine the issue any more than the fact that both were white determined the issue in Barela. Is it your theory that the discrimination was because your client was black and she was not? She was of a different race. That's the issue. And that's the same exact issue as Judge Lahir was on that panel in Barela. That was the exact issue decided in that case as a threshold issue and it should be decided the same way here. In any event, why can't the issue assume prima facie case? We tend to assume prima facie case most of the time. I understand. But why isn't the explanation manifestly not pretextual? It's manifestly pretextual. And it's manifestly pretextual however you view it. First of all, with regard to the event itself, the aggressor in the event taking the facts most favorably to the plaintiff, which is how you must take it, not most favorably to their construction after a case is brought of the facts. The facts are that she, Ms. Warburton, expressly said to my client after he made an inquiry about the tanks, you're stupid, which is something she had repeatedly said to him. He brought to the supervisor's attention the answer given doesn't have to do with this situation. It has to do with the history of your client having anger problems. No. That again is a view of the record which is a totally one-sided view. The better view of the record and one a jury could accept, there are two important salient points, one for five years previous to this, 2008 to 2013. She was there three years. She had more disciplinary problems in that period than he did. Second of all, if the issue of a zero policy with regard to workplace violence was true ---- Breyer, what are her disciplinary problems? What were hers? She had an issue, as is written up in October 18th, 2013, known to Gauss earlier, of a dispute with a nurse in which she had apparently lost a temper and behaved intemperately. That's in the record. She had other issues of not responding properly to emergency situations. And, Mr. Sussman, there are only two disciplinary records for her. In the three years. One from 2011 through 2014, 15, one a verbal warning, one a written warning. There were three, including this one. This was the third one. By comparison, from 1994 through 2013, 14, there were several disciplinary warnings and reports associated with your client. And I'm not ---- I understand. This is on the record. Is that correct? That's correct. Okay. So why is it ---- But it's totally irrelevant. And, well, setting aside who is black and who is white, why is it you're using Ms. Warburton as a comparator? Is that correct? She was in the incident. She was the aggressor in the incident. She's the appropriate comparator. Well, why is it that she's an appropriate comparator if they have such different Just go with me. Assume that they have very different disciplinary histories. Why is she similarly situated enough to be an appropriate comparator? Okay. Under Graham, the similarly situated requirements are these. They are subject to the same disciplinary regimen and standards, which is clearly true here. They have the same supervisory structure, which is clearly true here. So the ---- and you then have to look at their conduct. The employer here, through Gals, who I believe is the principal decisionmaker, explicitly states that where you have remote in-time incidents, they are not to be considered. That is a substantive principle adopted by the employer. That wasn't what I said. That was her testimony. If that be true and applied, that's one side of it. The other side of it is, if you have a person, Judge, who has 20 disciplinary infractions in the 15 years of the first 15 of the 20 years, and they never terminate him, they never do anything about it, even though it's ---- I think you used the term anger management problem, or Judge Calabresi used that term, one must and a jury could very easily say, as he said, most of these things even never happened. They weren't taken seriously by the company. The company acted in a totally inconsistent manner with the belief that they were serious. There weren't several. There were about 15. So if you argue a case to a jury, what you say to a jury totally plausibly is, yes, we understand that's the history, but you didn't take that history seriously. You didn't take it seriously. If you did, this man would have been gone 14, 18 years ago. So ---- I'm sorry. Go ahead, Judge. I couldn't hear you. Scalia. No. I just say it's a remarkable argument because it says because you don't fire somebody, it never comes to the point where you have to say enough is enough. Verrilli, No. But here's the issue. Now, again, you have to ---- I think the problem with all these cases, and I've, as you know, argued many of them, is we have a certain set of principles as to how you're supposed to take the evidence, how you're not supposed to take the evidence. You're supposed to identify and not decide issues. That's one of our maxims. But repeatedly in these cases, that's not what's done at the district court level. Here, the question is, could a reasonable jury seeing that history reach the conclusion that these matters were not seriously considered by the company as major issues? Because had they been, the man would have been terminated a long time ago if you have a zero-violence policy in the workplace. I'm not disputing that policy. I'm saying if you really had that policy and you really believed that was what the man was doing, you would have gotten rid of him. You wouldn't have kept him out of sympathy. How could you keep him out of sympathy? Breyer, it's not a pretext argument, more or less. It's a subtext of the pretext argument. It is a subtext of the pretext. But here's the point. In this specific incident, to go to your question, Judge, as to why she's the appropriate comparator, she had been there, as Your Honor points out, a relatively short period of time. In that period of time, as her own supervisor wrote the next month, she had serious issues with professionalism. She got a two-fold group of them. Sotomayor, that's very different from anger issues. You know, that's why it's hard to hurt. If all of her problems were anger problems, then I could see your argument more. Somebody is disciplined for spelling wrong. That's not it. And then gets into an argument, and I'm not saying that it was, with somebody who has been disciplined repeatedly for getting angry and shouting and doing things. The two are different things. I — they are different things. But here, what actually occurred, just again, so we are trying to stay as close to the facts as the record allows, taking the facts most favorably to the nonmoving party, which is the standard. If, in fact, she had repeatedly taunted and teased him and called him stupid from day one, if she, in this incident, said, I'm going to punch you, if those were her words, which is what he attests to, then when you talk about an anger management problem, it's plainly manifest by her behavior. The company, one could argue to a jury reasonably, had information from him that she repeatedly taunted him at work and did not take that seriously through Gausp, who happens to be Hispanic. Now, could a — does a jury have to decide that the behavior she's manifesting toward him and being condoned by the company indicates racial bias? They might not have to conclude that, but they could conclude that. And they could conclude that this whole history of his was not significant to the company because for the five prior years, there had been no instances like this, and he had, in fact, markedly changed. They could conclude that based on this record. So the trotting out of the history — I'm not arguing that it would be irrelevant. I'm not filing a motion in Lemonet to say to them, you can't bring it into the trial. I actually want them to bring it into the trial, because I think it goes to the pretext issue. Roberts. Thank you. Thank you. You've reserved two minutes for rebuttal. Thank you. And we'll hear from Ms. Klein. May it please the Court. I'm Eve Klein, counsel for the New York Dialysis Services. Your Honors, it's rare that I'm arguing a case of this sort to the Second Circuit. I'm surprised that I'm here, because this is not a closed case. It's very rare that you get a situation where the plaintiff doesn't make out the Prima Fasci case, and the Court almost always looks to the next set of factors. In this case, the de minimis burden of satisfying the Prima Fasci case was not met. As you know, the plaintiff must show that the plaintiff's in a protected class, was qualified and subject to an adverse action, all of which is true, but the plaintiff must also show that he was discharged under circumstances that give rise to an inference of discrimination. A couple of different ways you can do that. One way is that you have a comparator, somebody who is similarly situated to you that was treated differently. In this case, the complaint in five different places alleges that Mr. Toussaint, the plaintiff, was treated differently than a non-black technician. They didn't allege that he was treated differently than somebody who was Hispanic. The whole basis of the complaint, five different allegations, is that he was black and she was non-black. The facts are very clear that she's black. She's also Hispanic. She testified that she's black. And she is in the best position to testify or know what her race is. Yes, but after all, she records herself as Hispanic. The government is very bizarre in these things. I've just seen this in my law school. I tried to find out how many people of different ethnic groups were in the entering class. And I was told that, well, there are many people who are mixed and say mixed. If somebody says Hispanic, that trumps everything else, and nothing else is allowed. It's bizarre, but that's the way the government is doing it. So if a government does that, it is not peculiar, or at least, I mean, it doesn't make for a winning case, but it doesn't make it absurd to say she is Hispanic because that's what she is listed as. Your Honor, on the form that you're referring to, Joint Appendix 499, she lists herself as Hispanic, and then, parenthetically, it says, regardless of race, if you were to check off the African-American box, it says, not a person of Hispanic descent. So she testified that she – I know. I'm not saying she did anything wrong. It is this very peculiar governmental thing that, for reasons I don't understand, says if you are Hispanic, that is it, and you can't say mixed race. It's bizarre. Well, I think that that's changed over time, but, look, these issues of ethnicity, Ms. Klein, and race are very complex and have a long, long history. But I take it that you are referring to the motion for sanctions that was denied because you think that this claim was frivolous. But the allegation was that at least he viewed the comparator as something other than himself, something racially other than black. Is that – That's not what he alleged in the complaint, nor did he amend it. This is a non-black technician. Right. But she is black. Well, okay. She said she's black. I mean, who better to determine if she's black? Let me be quite blunt. I've seen thousands now of these cases, and there are many that are more frivolous than this one. I must say, I found the motion for sanctions to be close to frivolous. To say that because a previous lawyer didn't think there was a case meant that this lawyer can't think that there's a case. To say that she cannot be viewed by this person as a comparator because he says, I don't think she's of the same race as mine when there are some things of this sort. It may be a loser, but to say it's frivolous is extraordinary. So you know, I have very little problem on the merits of the case. But I must say, I had real problems with the bringing of a motion to sanction. Would you like to withdraw your appeal on the motion for sanctions? Do I want to? Yes. Can I? If this Court wants me to, I shall, but I'd like to be heard. I don't want you to. I'm asking you, would you like to withdraw that appeal, that appeal, that challenge? I'd like to make just a couple of points, and if you feel the same way, I shall, if I may, Your Honor. Okay. The reason we made the motion for sanctions was not just that an attorney of the firm stood up in open court and said this was not a race case, but the district court itself indicated that Rule 11 was a close case, that it was a difficult decision to make. And if you look at what the district court found, there were a number of things. The court said the case was a close one and it's entirely without merit, that S&W manufactured — this is Judge Karras' words — a dispute about Warbington's race that didn't exist, that S&W's opposition was poorly reasoned, that some judicial resources were wasted by the conduct of plaintiff's counsel in failing to notice Patterson for a deposition, that S&W misrepresented facts of the court in its letter submissions, that S&W's actions compelled defense counsel to appear at a court conference for the sole purpose of the court telling the — Your basis for your motion for sanctions is that the claim itself was frivolous. And there's two parts to our motion, that the claim was frivolous and also that what And the court made a number of findings in that regard, you know, so that there was a conference that didn't need to happen, that plaintiff's counsel used hyperbolic statements in his papers that took a potshot at counsel that was inappropriate, which he also did again in the appeal. If the motion for sanctions is because of your opposing counsel's behavior to the district court, then I take it the district court can handle that really very well itself, and they denied sanctions. So how do you appeal that, the fact that you're claiming they were bad to the district court and the district court said, frankly, no, that doesn't matter, but you're appealing that? So I have — I have problem on both counts. If what you're complaining about is the nature of the suit in the first instance as frivolous, that we would be able to look over what the district court did. And there I think your position is weak, to put it mildly. And if instead the issue is how he behaved at the district court, how can you possibly appeal that when the district court said that isn't worth, you know, I'm not going to give sanctions for that? Your Honor, it is a matter of discretion. I don't agree — I don't disagree with that. But the district court made a series of findings, some of which I just read to you, that suggests that sanctions were warranted. And then decided against you on sanctions. Did you appeal that? We did. We did. So is the appeal of that sanctionable? So frivolous as to be sanctioned. I'm going to — before you answer that question, would you like to withdraw your challenge? I'll withdraw the appeal. Okay. Great. Thank you. So why don't you proceed to the merits? Okay. So with regard to the merits on the Prima Fasci case, counsel does not make that because the plaintiff is of the same race by her own testimony and by her appearance. And the fact that she's also Hispanic is not relevant because that wasn't the pleadings  Furthermore, they are not similarly situated, which is one of the standards for the Prima in the disciplinary record. The record facts are clear that Ms. Warbington, the comparator, had only one disciplinary in 2011. The other that counsel referred to was the discipline for the very instance that we're talking about. So the records, there were 20 versus 1 disciplinary instances. 14 of the disciplinary instances that the plaintiff had were of the type that were argumentative and aggressive, the same thing that he was fired for. Counsel could have shown other evidence of discrimination. There were no comments or documents or anything that supported that either. So there's no Prima Fasci case here, which is, you know, unusual in these cases. Even assuming there was, the defendant articulated a very legitimate business reason for the termination. Mr. Toussaint got into an egregious situation with another coworker late in the evening where he became aggressive. Now, counsel argues there's a dispute in the facts about what happened that evening, but that's not really the issue. Because there were three people there. The company conducted an investigation, and the investigation was a sound investigation, even though the plaintiff doesn't agree with it. The plaintiff hasn't shown that it was an unfair investigation. Here, everybody in the incident was spoken to twice by a combination of three different supervisors. There was no showing that any of the supervisors were biased towards the plaintiff. In the paper, counsel argues that, well, one supervisor has written him up for years, so she must be biased. That doesn't show bias. There was no challenge to those at the time. In addition, there were four other supervisors that wrote up the plaintiff, and 15 different employees complained about him. So, there's really no question that they properly did an investigation, and they also relied on a record that was replete with similar type of conduct. There was no showing of pretext at all here by counsel. So, thank you. Thank you very much. Mr. Sussman? I think this case is governed by Johnson v. CH Energy Group. I think that the facts in that case, which is a 2009 case by this circuit, are almost the same here, and it goes to the point that Judge Calabresi raised earlier, which is this. A company makes claims about what it did and what it believed. The question is whether, on a motion for summary judgment, a district court under Reeves is allowed, I'll go as far as say allowed, to accept that version of events as the compelling version of events, or is it up to a jury to determine whether the assertions they make to the district court are or are not credible. This is exactly that case structurally, because here, the assertions they're making are, as you just heard, the prior disciplinary is relevant to our decision here. That's contrary to what the one of the principal decision-makers indicated, which is ancient events are not considered. He was on no discipline at that time. They have progressive discipline. He was on none of the progressive steps. He wasn't on a verbal counseling. He wasn't on written warning. He was nowhere on the scale. She was more on the scale. Then you get to the event itself, and you have to focus on the event itself, because in Johnson, what went on is an African-American wasn't promoted. The company said he wasn't promoted because he went up for a linesman's test, and he took his glove off. And we have evidence he took his glove off. We did an investigation, and that's what they said. They observed, and they said he took his glove off. He said, I didn't take my glove off. This Court said the fact that the company believed or claims they believed he took his glove off in light of his denial and the assertion by the testers that he did creates an issue of fact. That's exactly what we have here. He says she was the aggressor. She agrees to calling him stupid, not only then, but on previous occasions. It's not denied that he — she said, I'm going to punch you. He didn't make any statements like that at the time. So counsel gets up and says, indisputably, he's the aggressor. That's not true. On his version of events, he is not the aggressor. So to say she's going to be — he's going to be terminated for being the aggressor, and that's indisputable. It's a fact. That's wrong. It's flat-out wrong, and it's contrary to every principle of summary judgment. Thank you. Thank you very much. Could I ask you a question? There's one question. Judge Quigley. In the opinion of the district court, he quotes, I assume, a member of your firm as he — the judge says, when the court pressed counsel as to whether this case was still a race case, plaintiff's counsel responded, on the facts that I've learned, I don't know. In the last weeks of discovery, no. Sure, he did say that. He was wrong. He was fired. But you're right. He did say that. There's no question he said that to the court. It's in the transcript. And — He was an inexperienced lawyer. He went to the case. He got — he got somewhat intimidated by the district court. Not any fault of the district court's. And he did say that. And that's of no relevance. I don't believe it's of any relevance. The district court itself said it was of no relevance in his footnote in the sanctions decision. In the sanctions decision? No, I don't think it's of any relevance, because, look, the facts of the case, respectfully, are the facts of the case. What this lawyer, this inexperienced lawyer, thought the facts might have been, didn't understand them or — What exactly was his experience? I mean, you hired him. I did hire him. And he was an inexperienced attorney. He went to the conference. And he had not done race cases before. And he did not properly represent the court. And you do these cases regularly, and you hired him. I did. I agree with all that. I did hire him. And I do do the cases regularly. And it was an error on my part. But that doesn't mean the case should have been dismissed on summary judgment. That's the question. One doesn't follow from the other. I did make an error. But it wasn't that error.